# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-03107-STV

IVAN CODY,

      Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.,

      Defendant.

_____

# ORDER
_____

Chief Magistrate Judge Scott T. Varholak

      This matter comes before the Court on Defendant's Motion for Partial Summary Judgment ("Defendant's Motion") [#72] and Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion") [#73].  The parties have consented to proceed before a United States Magistrate Judge for all proceedings, including entry of a final judgment. [##14, 15]  The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion.  For the following reasons, the Court respectfully **DENIES** Defendant's Motion and **DENIES** Plaintiff's Motion.

## I.    BACKGROUND

      This case arises out of a motorcycle accident and subsequent dispute over the payment of underinsured motorist ("UIM") benefits between Plaintiff and his insurance

company, Defendant.  [*See generally* #56]  Plaintiff asserts four claims against Defendant related to the benefits dispute: (1) determination and payment of UIM benefits; (2) breach of the tort duty of good faith and fair dealing ("common law bad faith"); (3) unreasonable delay or denial of insurance benefits in violation of Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 ("statutory bad faith"); and (4) exemplary damages for willful and wanton conduct. [*Id.* at ¶¶ 32-47]

Both parties have filed motions under Rule 56 of the Federal Rules of Civil Procedure seeking partial summary judgment in their favor.  [*See* ##72, 73]  Plaintiff seeks summary judgment on Claims Two and Three.  [#73 at 2, 16]  Defendant seeks summary judgment on Claims Two, Three, and Four.  [#72 at 1]  Both Motions are fully briefed: Plaintiff's Motion [#73]; Response to Plaintiff's Motion [#88]; Reply to Plaintiff's Motion [#93]; Defendant's Motion [#72]; Response to Defendant's Motion [#90]; Reply to Defendant's Motion [#94].  This matter is thus ripe for disposition.

## II.    UNDISPUTED MATERIAL FACTS[1]

On May 8, 2020, Plaintiff was involved in a motor vehicle accident while riding his motorcycle.  [#93-1 at ¶ 1]  At the time of the collision, Plaintiff was insured for UIM benefits under two policies issued by Defendant totaling $500,000 in coverage.  [*Id.* at ¶ 2]  The driver who collided with Plaintiff, Ms. Gonzalez, was insured in the amount of $25,000 under a policy also issued by Defendant.  [#95-1 at ¶ 1]  On May 15, 2020, Plaintiff reported the motorcycle accident to Defendant.  [*Id.* at ¶ 2]

---

[1] Consistent with D.C.COLO.LCivR 56.1(1), Defendant's Motion and Plaintiff's Motion both include a statement of material facts which set forth each party's proposed undisputed facts in sequentially numbered paragraphs.  [##72 at 3-6; 73-1]  The material facts identified in this section are drawn from the summary judgment record and are undisputed unless otherwise noted.

Dr. Stanley was a physician that treated and later performed lumbar disc replacement surgery on Plaintiff. [*Id.* at ¶ 59] Concerning Plaintiff's medical history, Dr. Stanley testified that Plaintiff saw a chiropractic physician on June 5, 2020, complaining of pain radiating into his right leg and right-sided lumbar pain. [#93-1 at ¶ 15] Plaintiff stated this pain pattern developed after the motorcycle accident. [*Id.* at ¶¶ 15, 19] Despite Plaintiff's assertion, however, Plaintiff had been treated by a chiropractor, Dr. Beaman, before and after the motorcycle accident. [#95-1 at ¶ 59]

Plaintiff received an MRI on November 19, 2020 that demonstrated a right L5-S1 paracentral disc protrusion with L5-S1 disc space narrowing and right-sided L5-S1 foraminal stenosis. [#93-1 at ¶ 16] On December 10, 2020, Plaintiff was examined by Dr. Possley, an orthopedic surgeon. [*Id.* at ¶ 17] Dr. Possley noted that Plaintiff was having radicular symptoms down his right leg at the time of the examination. [*Id.*] Dr. Possley learned that Plaintiff had engaged in snow shoveling after the motorcycle accident, which flared up the pain Plaintiff experienced in his back. [*See id.* at ¶ 33; #95-1 at ¶ 46] Dr. Possley later performed a discectomy, a surgery involving removal of portions of damaged spinal disc material, on Plaintiff. [#95-1 at ¶ 59]

On January 26, 2021, Plaintiff's counsel advised Defendant that Plaintiff's injuries and other losses exceeded $25,000. [*Id.* at ¶ 5] A month later, on February 27, 2021, Defendant opened a claim for Plaintiff's UIM benefits. [*Id.* at ¶¶ 6, 32] Defendant paid Plaintiff $25,000 in a check dated March 8, 2021, reflecting the policy limits of Ms. Gonzalez's policy with Defendant. [*Id.* at ¶ 1] Defendant additionally made payments to Plaintiff for undisputed benefits totaling $23,018.23 between 2021 and 2022. [#93-1 at ¶ 25]

By November 10, 2021, Defendant had not yet obtained all of Plaintiff's medical records and bills. [#95-1 at ¶ 11] On this date, Defendant began working with American Retrieval to obtain the missing records and bills. [*Id.*] On November 17, 2021, Plaintiff's claim file was transferred from adjuster Steve Gorka to Tracy Huiras. [*Id.* at ¶ 12]

On January 10, 2022, Ms. Huiras contacted American Retrieval to follow up on outstanding medical records and bills, to which American Retrieval replied just over a week later that it was having ongoing difficulties obtaining the records. [*Id.* at ¶ 14] On February 23, 2022, Defendant called Plaintiff's counsel for a status update. [*Id.* at ¶ 15] Plaintiff's counsel informed Ms. Huiras five days later that Plaintiff was still treating his injuries with chiropractic and massage therapy. [*Id.*]

On March 30, 2022, American Retrieval requested more time to obtain missing records. [*Id.* at ¶ 16] On May 13, 2022, Plaintiff's counsel confirmed that treatment was ongoing, and Ms. Huiras requested updated records. [*Id.*] After obtaining updated records, Ms. Huiras noted that Plaintiff's medical records indicated that he had reaggravated his lumbar symptoms after snow-shoveling. [*Id.* at ¶ 17] Defendant called Plaintiff's counsel for a status update on September 6, 2022. [*Id.*] Though Plaintiff's counsel did not respond, they emailed Defendant on November 18, 2022, letting Defendant know that Plaintiff had scheduled surgery. [*Id.*]

On February 1, 2023, Ms. Huiras left two voice mails seeking a status update raising concerns about the statute of limitations and whether Plaintiff's degenerative disc disease was related to the motorcycle accident. [*Id.* at ¶ 18] On February 16, 2023, Ms. Huiras spoke with Plaintiff's counsel about the absence of neck and back issues documented in the emergency room following the motorcycle accident. [*Id.* at ¶ 19] On

4

March 7, 2023, Ms. Huiras left a voicemail for Plaintiff's counsel regarding whether he would like to mediate to resolve the claim.  [*Id.* at ¶ 20]  The next day, Ms. Huiras indicated that she would contact Plaintiff's medical providers directly.  [*Id.* at ¶ 21]  Plaintiff's counsel responded that mediation felt premature because Plaintiff was scheduled to receive a surgery on April 24, 2023.  [*Id.*]

On April 18, 2023, Plaintiff's counsel requested that Defendant agree to a tolling of the statute of limitations.  [*Id.* at ¶ 40]  On September 7, 2023, Ms. Huiras emailed Plaintiff's counsel to request Plaintiff attend an independent medical examination ("IME") with Dr. Chen and asked for a mediation update.  [*Id.* at ¶ 27]  The IME was scheduled two weeks later.  [*Id.* at ¶ 28]

On October 16, 2023, Plaintiff's counsel notified Ms. Huiras that he had forwarded questions from Defendant to Dr. Stanley.  [*Id.* at ¶ 29]  Dr. Stanley provided responses and those responses were forwarded to Dr. Chen for the IME.  [*Id.*]  Plaintiff's medical expenses at this time exceeded $300,000, so Plaintiff's counsel expressed interest in settlement.  [*Id.*]

In November 2023, Defendant obtained the IME on Plaintiff.  [#93-1 at ¶ 3]  The physician who performed the IME, Dr. Chen, is not board-certified to perform spinal surgeries.  [#95-1 at ¶ 55]  Dr. Chen performs 50-100 IMEs per month and testified that he made $1.9 million in 2024 doing expert work including IMEs for primarily insurance companies and insurance defense law firms.  [*Id.* at ¶ 39]

After his assessment, Dr. Chen noted that Plaintiff's chief complaint was "[l]ow back pain going down the right leg."  [#93-1 at ¶ 4]  In his conversations with Dr. Chen, Plaintiff denied having a history of lower back issues.  [*Id.* at ¶ 5]  Dr. Chen diagnosed

Plaintiff with "acute worsening of chronic L5-S1 degenerative disc disease." [*Id.* at ¶ 6] He opined that Plaintiff's injuries were 50 percent related to pre-existing conditions, 25 percent related to the accident, and 25 percent related to a shoveling incident which occurred after the motorcycle accident. [*Id.*; #95-1 at ¶ 33] Dr. Chen testified that Plaintiff had "no subjective complaints of chronic back pain before this accident, but degenerative disc disease is mostly asymptomatic, so that's not unheard of. In fact, it's very common." [#93-1 at ¶ 9]

On June 17, 2024, Dr. Chen issued an addendum to his original report, changing his apportionment of the causation of Plaintiff's injuries to 50 percent pre-existing and 50 percent shoveling snow. [*Id.* at ¶ 27] Dr. Chen issued another addendum changing his apportionment on February 18, 2025, stating there was at most a 25 percent apportionment to the motorcycle accident, but that it should be 100 percent apportioned to pre-existing conditions and shoveling snow. [*Id.* at ¶ 28] Defendant considered Dr. Chen's opinion in evaluating Plaintiff's claims. [##95-1 at ¶ 34]

Dr. Possley disagreed with Dr. Chen attributing 50 percent of Plaintiff's condition to degenerative changes because Plaintiff was asymptomatic. [#93-1 at ¶ 12] Dr. Possley testified that degenerative changes do not always lead to pain or other symptoms. [*Id.* at ¶ 13] He opined that Plaintiff did not have any pre-existing records to indicate that Plaintiff had chronic back issues, though Plaintiff had received five chiropractic treatments over the course of several months. [*Id.* at ¶ 14] Dr. Possley testified that Plaintiff's flare up of pain from snow shoveling after the accident was a consequence of his disc injury from the motorcycle accident. [*Id.* at ¶ 33; #95-1 at ¶ 46]

Dr. Stanley also testified that he did not agree with Dr. Chen's apportionment. [#93-1 at ¶ 20]. Dr. Stanely reasoned that Plaintiff was having radicular pain, meaning a pain that radiated down Plaintiff's leg, prior to the snow-shoveling incident and degenerative disc disease does not cause such radiating pain. [*Id.*] Dr. Stanley opined that 100 percent of Plaintiff's need for surgery was the motorcycle collision. [#95-1 at ¶ 35]

Dr. Chen testified that he did not know that it was improper under Colorado law to apportion to an asymptomatic pre-existing condition. [#95-1 at ¶ 30] He further testified that he was unfamiliar with *McLaughlin v. BNSF* and *Smartt v. Lamar Oil Co.* and did not consider Colorado law on apportionment when formulating his opinions on Plaintiff's condition. [*Id.* at ¶¶ 31-32; #95-1 at ¶¶ 48, 56] Dr. Chen testified that he did not rely on medical literature in reaching his apportionment figures that that there was no way to truly quantify apportionment. [#95-1 at ¶ 37] The Court found that Dr. Chen's appointment opinions were not scientifically reliable; thus, the Court struck them on June 4, 2025. [*Id.* at ¶ 38]

Ms. Huiras testified that she did not believe she had researched or inquired about Colorado law on apportionment when evaluating Plaintiff's UIM claim. [#93-1 at ¶ 22] Ms. Huiras did not recall the law on apportionment, or related Colorado cases, when she testified. [*Id.* at ¶¶ 23-24] American Family has adopted "exposure guidelines" for its Medical Payments adjusters to follow which provide: "If the claim is open for Med Pay or No-Fault only, Med Pay or No Fault should ask the following questions. Is the insured injured[?] Does the at fault party have insurance liability[?] If yes, ask for adverse liability

limits[.] When a potential UM/UIM claim is presented or an Attorney letter is received presenting a UM claim, open the exposure to involve injury immediately." [#95-1 at ¶ 31]

Plaintiff requested in written discovery all documents in Defendant's possession relating to its investigation and evaluation of Plaintiff's UIM claim. [*Id.* at ¶ 57] The disclosure of Defendant's handling of Plaintiff's claim terminated as of June 2024. [*Id.* at ¶ 58] Defendant deposed Dr. Possley, Dr. Stanley, and Dr. Beaman. [*Id.* at ¶ 59] On March 7, 2025, Defendant stated that it would produce evidence of how it handled Plaintiff's claim after June 2024. [*Id.* at ¶ 60]

## III.    STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co.,* 41 F.3d 567, 569 (10th Cir. 1994). Where, as here, the Court is presented with cross-motions for summary judgment, the Court "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 907 (10th Cir. 2016) (internal quotations omitted).

When the moving party bears the burden of persuasion at trial, "the moving party must establish, as a matter of law, all essential elements of the [claim on which summary judgment is sought] before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). In other words, the moving party "must support its motion with credible evidence showing that, if uncontroverted, the moving party would be entitled to a directed

verdict." *Rodell v. Objective Interface Sys., Inc.*, No. 14-CV-01667-MSK-MJW, 2015 WL 5728770, at *3 (D. Colo. Sept. 30, 2015) (citing *Celotex Corp.*, 477 U.S. at 331). "The burden then shifts to the non-moving party to produce evidence demonstrating the existence of a genuine factual issue for trial." *Id.*

When the moving party does not bear the burden of persuasion at trial, the movant may satisfy its initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact "simply by pointing out to the court a lack of evidence . . . on an essential element of the nonmovant's claim." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir.1998). If the movant carries this initial burden, the burden then shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial." *Id.* at 671 (quotation omitted).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury. *See Anderson*, 477 U.S. at 248-49; *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). Evidence, including testimony, offered in support of or in opposition to a motion for summary judgment "must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable juror could return a verdict for either party. *Anderson*, 477 U.S. at 248. "Where the record taken as

a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  In reviewing a motion for summary judgment, the Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).

## IV.    ANALYSIS

### A.    Common Law and Statutory Bad Faith Claims

#### 1.    Colorado Law

"Colorado law provides for two types of bad faith claims arising out of an alleged breach of an insurance contract: (1) common law bad faith and (2) statutory bad faith." *Gardner v. State Farm Mut. Auto. Ins. Co.*, 639 F. Supp. 3d 1158, 1163 (D. Colo. 2022) (citing *Dowgiallo v. Allstate Ins. Co.*, No. 19-cv-03035-KMT, 2020 WL 1890668, at *2 (D. Colo. April 16, 2020)).  Both require "a showing of unreasonable conduct."  *Id.* (quoting *McKinney v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01651-CMA-KLM, 2021 WL 4472921, at *4 (D. Colo. Sept. 30, 2021)).

Beginning with statutory bad faith, Colorado law prohibits a person engaged in the business of insurance from "unreasonably delay[ing] or deny[ing] payment of a claim for benefits owed."  Colo. Rev. Stat. § 10-3-1115(1)(a).  A prevailing party is entitled "to recover reasonable attorney fees and court costs and two times the covered benefit."  *Id.* § 10-3-1116(1).  Accordingly, a "statutory bad faith claim primarily concerns whether an insurer denied or delayed the payment of insurance benefits without a reasonable basis." *Gardner*, 639 F. Supp. 3d at 1163 (citing *State Farm Mut. Auto. Ins. Co. v. Fisher*, 418

P.3d 501, 506 (Colo. 2018)).  "To succeed on a claim of unreasonable delay or denial, an insured must establish that (1) the insurer delayed or denied payment of benefits to the insured, and (2) the delay or denial was without a reasonable basis."  *Id.* (citing *Am. Fam. Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185-86 (Colo. 2018)).

"In addition to an insurer's statutory duties, an insurer has a simultaneous common law duty to deal in good faith with its insured."  *Id.* (citing *Am. Fam. Mut. Ins. v. Allen*, 102 P.3d 333, 342 (Colo. 2004)).  "Due to the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured,' an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort."  *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004) (quoting *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003)).  "The requirements of a common law bad faith claim under Colorado law are heightened in comparison to those of a statutory bad faith claim."  *Stewart v. Am. Fam. Mut. Ins. Co., S.I.*, 744 F. Supp. 3d 1198, 1202 (D. Colo. 2024) (quoting *Butman Fam. Inv. Ltd. P'ship v. Owners Ins. Co.*, No. 19-cv-01638-KLM, 2020 WL 1470801, at *8 (D. Colo. Mar. 25, 2020)).  "In addition to demonstrating that the insurer delayed or denied benefits without a reasonable basis, 'a common law insurance bad faith claim requires the insured to [prove] . . . that the insurer knowingly or recklessly disregarded the validity of the insured's claim."  *Id.* (quoting *Butman Fam. Inv. Ltd. P'ship*, 2020 WL 1470801, at *8).

Though what constitutes reasonableness is ordinarily a question of fact for the jury, "in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law."  *Dowgiallo*, 2020 WL 1890668, at *2 (quoting *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012)).  "The

reasonableness of the insurer's conduct is determined objectively and is based on proof of industry standards." *Id.* (quoting *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 847 (Colo. 2018)). And "the reasonableness of an insurer's decision to deny or delay benefits to its insured must be evaluated based on the information that was before the insurer at the time it made its coverage decision." *Schultz*, 429 P.3d at 848-49. "The aid of expert witnesses is often required in order to establish objective evidence of industry standards." *Goodson*, 89 P.3d at 415 (citing *Redden v. SCI Colorado Funeral Servs., Inc.*, 38 P.3d 75, 81 (Colo. 2001)).

### 2. Defendant's Motion

Defendant argues that it is entitled to summary judgment on Plaintiff's common law bad faith claim. [#72 at 7-16] It asserts that "the evidence establishes that [Defendant] timely evaluated Plaintiff's claim, taking into account his injuries and opinions of medical providers." [*Id.* at 9] Defendant summarizes Plaintiff's contentions as "nothing more than a disagreement over the evaluation of his claim." [*Id.* at 10]

Defendant identifies various facts in support of its argument that it acted reasonably in evaluating Plaintiff's claim. Defendant reminds the Court that it paid Plaintiff $23,018.22 in covered UIM policy benefits while it investigated Plaintiff's claim. [*Id.* at 9] Defendant argues that questioning the extent and cause of Plaintiff's injuries, requesting an IME, and gathering records from Plaintiff's treating physicians were reasonable actions in light of Plaintiff's history. [*Id.* at 10-11] Defendant recites various actions it took to address Plaintiff's claim, including opening the UIM in February 2021, conducting a medical records review in July 2022, sending questionnaires to Plaintiff's treating

physicians, and relying on the information it received from Dr. Chen after the IME.  [*See id.* at 11-16]

In its Motion, Defendant cites numerous cases to suggest that Plaintiff has not established a genuine issue for trial.  [*Id.* at 8-11]  Support for Defendant's argument can be categorized into two groups: (1) Defendant's conduct was not unreasonable because the claim was "fairly debatable" and (2) Defendant's conduct was not unreasonable because Plaintiff merely disputes Defendant's valuation of Plaintiff's claim.  [*Id.*]

To begin, the Court disagrees with Defendant's "fair debatability" argument as a matter of law.  "Under Colorado law, it is reasonable for an insurer to challenge claims that are 'fairly debatable.'"  *Vaccaro*, 275 P.3d at 759 (quoting *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 496 (Colo. App. 2011)).  "[I]f a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable,' this weighs against a finding that the insurer acted unreasonably."  *Id.* (quoting *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010)).  "Nevertheless, 'fair debatability is not a threshold inquiry that is outcome determinative as a matter of law.'"  *Id.* at 759-60 (quoting *Sanderson*, 251 P.3d at 1217).  Indeed, "the Tenth Circuit has explicitly rejected the argument that *Zolman* declared the fair debatability of a claim determinative of reasonableness."  *Casaretto v. GEICO Cas. Co.*, No. 16-cv-00285-MEH, 2017 WL 7731742, at *4 (D. Colo. Aug. 9, 2017) (citing *Home Loan Inv. Co. v. St. Paul Mercury Ins. Co.*, 827 F.3d 1256, 1261-1262 (10th Cir. 2016)).  Accordingly, Defendant's argument that it is entitled to summary judgment because the claim was "fairly debatable" alone is unpersuasive.

Defendant's remaining argument centers around the idea that Plaintiff has done nothing more than provide conclusory statements that Defendant acted unreasonably. [#72 at 10-11]  When a plaintiff merely alleges that an insurer defendant unreasonably delayed or denied payment of covered benefits, without any facts regarding how the defendant acted in bad faith, courts consider these to be "conclusory statements" based on "subjective beliefs" that do not constitute summary judgment evidence.  *5555 Boatworks Drive LLC v. Owners Ins. Co.*, No. 16-cv-02749-CMA-MJW, 2017 WL 6361398, at *5 (D. Colo. Dec. 13, 2017).  "Simply saying that [a] defendant acted unreasonably or unfairly, does not make it so."  *Villa Maison Homeowners Ass'n Inc. v. Owners Ins. Co.*, No. 17-cv-01542-RM-KMT, 2018 WL 11182673, at *2 (D. Colo. July 9, 2018).  However, an insurer cannot "avoid liability for unjustified denials of benefits simply by framing each denial as a valuation dispute." *Vaccaro*, 275 P.3d at 760.  "[E]very lawsuit over insurance coverage is a valuation dispute to the extent that the parties disagree about how much should be paid under a policy, or whether the policy provides for coverage at all."  *Id.*  Thus, if insurers were permitted to escape liability for bad faith by simply framing the issue as a mere valuation dispute, insurers would be permitted to "refuse to pay any claim where money is at issue."  *Id.*

And this is more than a simple valuation dispute.[2]  For example, Plaintiff argues that Defendant knew of his injury, exhausted Medical Payment benefits by September

---

[2] The Court notes that Defendant's Statement of Undisputed Facts focuses on its claims handling conduct and does not clearly set forth its valuation of Plaintiff's UIM claim or Plaintiff's contrasting valuation; thus, Defendant does not appear to provide facts in support of its position that this case presents a mere valuation dispute.  [*See* #72 at 3-6] Indeed, the record indicates that Plaintiff incurred at least $300,000 in medical bills, most of which were not paid by Defendant.  [#90-1 at ¶ 29]  So this is not a typical dispute over valuation—such as where the insurance company and it's insured dispute future medical

14

2020, and did not open Plaintiff's UIM claim until February 2021.  [#90 at 5]  Plaintiff's expert opined that this delay in opening the claim did not comply with Colorado insurance industry standards.  [*Id.*; #90-2 at 7]  In addition, Plaintiff argues that Defendant's delay violated its own exposure guidelines, which inform Medical Payment adjusters that when a potential UIM claim is presented, the adjuster should "open the exposure to involve injury immediately."  [##90 at 4-5; 95-1 at ¶ 31]  Defendant's violation of its own policies is relevant because "[i]nsurance companies' internal policies and guidelines can serve as evidence of industry standards, which are relevant to the reasonableness analysis." *Montmeny v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-3378-WJM-SKC, 2022 WL 1746901, at *5 (D. Colo. May 31, 2022).  And though Defendant disputes that it delayed opening the UIM claim and that it violated either its own exposure guidelines or insurance industry standards, arguing instead that it opened the claim at the time it reasonably appeared there might be UIM exposure [##72 at 11; 94 at 10], Plaintiffs' evidence could lead a reasonable jury to conclude otherwise.

There are various other aspects of Defendant's conduct, outside of mere valuation, that Plaintiff asserts were unreasonable. Plaintiff contends, and Defendant disputes, that Defendant unreasonably refused to agree to a tolling agreement.  [##90 at 5; 95-1 at ¶ 41]  Plaintiff contends that Defendant failed to investigate the opinions of Plaintiff's treating providers, considering only Dr. Chen's opinion.  [#90 at 8-11]  And in Colorado, an insurer may not delay or deny a claim without "conducting a reasonable investigation based upon all available information."  Colo. Rev. Stat.  § 10-3-1104(1)(h)(IV).  "In

---

costs or what value to place on an insured's pain and suffering.  Rather, this is a causation dispute.

conducting this investigation, the insurer must 'promptly and effectively communicate with anyone it was reasonably aware had . . . information pertaining to the handling of [a plaintiff's] claim.'" *Peden v. State Farm Mut. Ins. Co.*, 841 F.3d 887, 891 (10th Cir. 2016) (quoting *Dunn v. Am. Fam. Ins.*, 251 P.3d 1232, 1238 (Colo. App. 2010)). Indeed, Plaintiff's expert opines that Defendant's failure to follow up with Dr. Stanley was not the industry standard for handling claims. [#90-2 at 9]

This District has previously held that when a doctor performing an IME for an insurer apportions a need for surgery to a preexisting condition in conflict with a treating provider who apportions a need for surgery to injuries received in an automobile accident, and the insurer denies benefits for the surgery, there may be genuine issues of material fact as to whether an insurer acted with knowledge or reckless disregard for the validity of the plaintiff's claim. *Curtis v. State Farm Mut. Auto. Ins. Co.*, 621 F. Supp. 2d 1122, 1130 (D. Colo. 2008). Here, Plaintiff offers evidence that Dr. Stanley apportioned 100 percent of Plaintiff's need for surgery to injuries from the motorcycle accident. [##95-1 at ¶ 35; 90-10 at 3] Dr. Stanley was Plaintiff's treating provider. [#73-7 at 3 (19:9-18)] Dr. Chen concluded that at most 25 percent of Plaintiff's injuries were caused by the motorcycle accident. [#95-1 at ¶ 33] Though Defendant argues it considered Dr. Stanley's opinion in its evaluation of Plaintiff's claim, Plaintiff has provided evidence that Defendant's claim evaluation never mentions Dr. Stanley's opinion. [#90-9] Accordingly, there appears to be a genuine issue of material fact as to whether Defendant acted unreasonably under the circumstances in denying or delaying benefits and whether it acted with knowledge or reckless disregard for the validity of Plaintiff's claim.

In its Reply, Defendant attempts to refute this conclusion by arguing that it followed industry standards and that, because competing medical opinions existed, Defendant's evaluation was necessarily reasonable.  [#94 at 8]  But the mere fact that there were competing medical opinions does not automatically render Defendant's evaluation reasonable.  This is especially true here where Defendant relied upon the opinion of a doctor who performed 50-100 IMEs per month, primarily for insurance companies and insurance defense firms, and who issued an opinion on apportionment which stated that Plaintiff's injuries were at most a 25 percent apportionment to the accident yet somehow still concluded that 100 percent should be apportioned to pre-existing conditions and shoveling snow.  [##93-1 at ¶¶ 6, 27, 28; 95-1 at ¶ 39]

Defendant also attempts to minimize Dr. Stanley's opinion by noting that Dr. Stanley admitted that Plaintiff had "come in with quite a history."  [#94 at 7]  But Dr. Stanley ultimately concluded that 100 percent of Plaintiff's need for surgery was attributable to the motorcycle accident.  [#90-10 at 3]  Thus, Defendant's vague, cherry-picked statements, isolated from the greater context of Dr. Stanley's conclusions, are unpersuasive.

In its Reply, Defendant also attempts to argue that it acted reasonably because Ms. Huiras relied on multiple sources, including medical expertise, in evaluating Plaintiff's claim.  [#94 at 7]  But Defendant's alleged unreasonable actions are not that Ms. Huiras failed to rely on "multiple sources" or any medical examination.  The alleged unlawful conduct includes actions such as delaying opening Plaintiff's claim, failing to properly evaluate the snow shoveling incident, and failing to apply Colorado apportionment law. [*See generally* #90]  And as explained above, the mere existence of multiple medical opinions does not, on its own, indicate that Defendant acted reasonably.

17

Finally, Plaintiff asserts additional dispute facts that Defendant knowingly and recklessly disregarded the validity of Plaintiff's claim. Disputed facts include whether Defendant intentionally misrepresented the contents of Plaintiff's pre-accident medical records in its claim evaluation [#90 at 11 (citing #95-1 at ¶ 43)]; whether Defendant legitimately investigated Plaintiff's snow shoveling injury [*Id.* at 12-13; *see also* #90-2 at 10 (expert opinion concluding that Defendant did not comply with industry standards in investigating the snow shoveling incident)]; whether Dr. Chen and Ms. Huiras's lack of knowledge of Colorado apportionment law when apportioning Plaintiff's injuries violated industry standards [#90 at 15; *see also* #90-2 at 13-14 (expert opinion that Defendant's lack of consideration of Colorado law in evaluating Plaintiff's injuries is not the industry standard)]; and whether Defendant failed to investigate and evaluate Plaintiff's claim in light of the new information that has come out during this litigation [#90 at 16-19; *see also* #90-2 at 15 (expert opinion indicating that Defendant's lack of activity after Plaintiff filed this suit violated industry standards)]. And though these facts are disputed, for purposes of Defendant's Motion, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to [Plaintiff]." *Garrett*, 305 F.3d at 1216.

Plaintiff's allegations thus go far beyond a difference in valuation of Plaintiff's UIM claim. Plaintiff has not merely made conclusory statements that Defendant acted unreasonably. Plaintiff alleges specific acts of delay, misrepresentation, failure to investigate, and violation of industry standards, among other things, and presents evidence in support of these allegations. Defendant has pointed to no legal standard which would suggest that Plaintiff's many contentions fail to create a genuine issue for trial.

"Typically, in cases like this, the parties employ experts to opine whether such conduct aligns with industry standards." *Ridgeview Ctr. LLC v. Canopius US Ins. Inc.*, No 18-cv-02850-REB-MEH, 2019 WL 2137394, at *4 (D. Colo. May 16, 2019). Indeed, in this case, the record suggests that both parties have employed such experts who have come to opposing conclusions. [#95-1 at ¶¶ 49-54] "It is not for the Court to decide at this stage the credibility of witnesses or the weight to give each piece of evidence; that job must fall to the jury, who is best positioned to make such determinations." *Foote v. State Farm Fire & Cas. Co.*, No. 20-cv-02342-RMR-MEH, 2023 WL 8780763, at *4 (D. Colo. Dec. 19, 2023) (citing *Excel Constr. Grp. v. GuideOne Mut. Ins. Co.*, No. 20-cv-03848-RMR-SKC, 2023 WL 2574373, at *2 (D. Colo. Mar. 20, 2023)). "Where, as here, genuine issues of material fact exist as to the basis for defendant's denial of coverage, reasonableness under the circumstances should be determined by the jury." *Thompson v. State Farm Mut. Auto. Ins. Co.*, 457 F. Supp. 3d 998, 1006 (D. Colo. 2020) (citing *Vaccaro*, 275 P.3d at 759).

In sum, Defendant has not demonstrated that "there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, Defendant's Motion as to Claim Two is respectfully DENIED.

A similar conclusion is necessarily compelled for Defendant's argument as to Plaintiff's statutory bad faith claim. Plaintiff has provided evidence that Defendant denied or delayed Plaintiff at least some benefits under his two $250,000 UIM policies. And as explained above, Plaintiff has also provided facts that create a genuine issue for trial as to the reasonableness of Defendant's actions in denying or delaying Plaintiff's benefits.

These are the only two elements at issue for a statutory bad faith claim.[3]  *Gardner*, 639 F. Supp. 3d at 1163.  Therefore, Defendant has not demonstrated that "there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Accordingly, Defendant's Motion as to Claim Three is respectfully DENIED.

### 3.    Plaintiff's Motion

Plaintiff argues that he is entitled to summary judgment on his common law bad faith claim and statutory bad faith claim.  [#73 at 16]  For the Court to grant summary judgment as to either claim, Plaintiff must establish, as a matter of law, that Defendant denied or delayed payment of insurance benefits without a reasonable basis.  Plaintiff identifies three actions taken by Defendant which he argues entitle him to summary judgment: (1) Defendant failed to consider and apply binding Colorado law regarding apportionment when evaluating Plaintiff's claim [*id.* at 4-11]; (2) Defendant failed to pay undisputed amounts of Plaintiff's UIM claim [*id.* at 11-12]; and (3) Defendant failed to fulfill its obligation to continue investigating and evaluating Plaintiff's UIM claim after June 2024 [*id.* at 12-16].  The Court addresses each argument below.

---

[3] In support of its argument for summary judgment on the statutory bad faith claim, Defendant cites to *Iwaskow v. Safeco Ins. Co. of Am.*, which states that "there is no brightline rule for the length of time that constitutes per se unreasonable delay in evaluating a claim."  No 21-cv-00005-PAB-SBP, 2023 WL 6376712, at *7 (D. Colo. Sept. 29, 2023).  However, the absence of a bright line rule does not indicate that Plaintiff has provided such insufficient facts that Defendant is entitled to judgment as a matter of law.  The record shows a factual dispute as to the reasonableness of Defendant's actions, including conflicting expert testimony provided by both parties.

### a.    Failure to Apply Binding Law

Plaintiff identifies various cases from state courts outside of this District that stand for the principle that an insurer's failure to apply available applicable law is evidence of bad faith.  *See Sloan v. State Farm Mut. Auto. Ins. Co.*, 85 P.3d 230, 236 (N.M. 2004) ("an insurer who fails to pay a first-party claim has acted in bad faith where its reasons for denying or delaying payment of the claim are frivolous or unfounded"); *Brown v. Patel*, 157 P.3d 117, 122 (Okla. 2007) ("bad-faith actions have been based upon an insurer's failure to follow judicial construction of insurance contracts or available applicable law" (citations omitted)); *Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 171 (Okla. 2000) as corrected (Jan. 16, 2001) (finding that no legitimate dispute or reasonable justification existed for the manner the insurer dealt with the plaintiff in light of the law readily available to the insurer and its counsel when handling the claim).   Plaintiff additionally cites to a Tenth Circuit case applying Oklahoma law, where the Tenth Circuit found that an "insurer is held to knowledge of the applicable Oklahoma law, and the reasonableness of its decision must be judged in light of that law."  *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 612 (10th Cir. 1994) (citing *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907, 913-14 (Okla. 1982)).

Plaintiff contends that Defendant failed to apply the binding law set forward by *McLaughlin v. BNSF Ry. Co.* and *Smartt v. Lamar Oil Co.  See McLaughlin v. BNSF Ry. Co.*, 300 P.3d 925, 936 (Colo. App. 2012) ("a plaintiff's damages cannot be reduced due to an asymptomatic pre-existing condition"); *Smartt v. Lamar Oil Co.*, 623 P.2d 73, 75 (Colo. App. 1980) ("the negligent actor is liable for . . . harm sustained in a subsequent accident which would not have occurred had the other's condition not been impaired, and

which is a normal consequence of such impairment" (quoting Restatement (Second) of Torts § 460 (A.L.I. 1965)).  But while Defendant does not dispute that neither Ms. Huiras nor Dr. Chen were aware of these holdings, Defendant does dispute whether Plaintiff's need for treatment resulted from an *asymptomatic* pre-existing condition and whether Defendant failed to apply the proper rules regarding subsequent injury.[4]  [#88 at 10-11]  And the Court agrees with Defendant that genuine issues of material fact exist.

With respect to *McLaughlin*, Defendant contends that Plaintiff's medical history, documented chiropractic treatment, and the presence of multi-level degenerative disc disease suggest that his possible pre-existing condition was not asymptomatic, but rather intermittently symptomatic.  [*Id.* at 11]  Though Plaintiff argues that his prior concerns were nothing more than "an occasional backache," Defendant's interpretation differs from this summary of Plaintiff's prior treatment and Defendant has submitted evidence that would allow a reasonable jury to side with Defendant's interpretation.  [*See* ##73-9 at 2; 73-10 at 2]  Specifically, Plaintiff visited the chiropractor for back pain prior to the motorcycle accident and Defendant obtained records of such visits.  [*Id.*]  And "an insurer's decision to deny or delay benefits to its insured must be evaluated based on the information that was before the insurer at the time it made its coverage decision."  *Schultz*, 429 P.3d at 848-49.  Thus, Plaintiff has not provided evidence that Defendant's failure to apply *McLaughlin* is sufficient, by itself, to demonstrate bad faith.[5]

---

[4] Although Dr. Chen's first apportionment figure was made under the impression that Plaintiff had an asymptomatic degenerative disc disorder, the record does not make clear that Defendant ever adopted this figure.  Indeed, Defendant later obtained evidence that Plaintiff had a history of back pain.  [*See* ##88 at 7; 93-3]

[5] Indeed, Plaintiff has not provided any support for the argument that a physician and an adjuster's testimony that they do not know of a particular case or jury instruction makes an insurer's conduct unreasonable as a matter of law.  [#73 at 6]  Rather, Plaintiff has

With respect to *Smartt*, the Court cannot find any cases that cite *Smartt* as a requirement for insurance apportionment decisions; the holding was instead intended to apply to tortfeasor liability determinations.  623 P.2d at 75.  But more importantly, while the evidence on this point is not particularly clear, it appears that the medical professionals and experts dispute whether the snow shoveling incident exacerbated a condition caused by the motorcycle accident, or a pre-existing condition.  [##72-8 at 4 (26:2-24); *id.* at 6 (54:8-25); 73-6 at 2; 73-10 at 2]   Therefore, the undisputed facts alone are not sufficient to show that Defendant's failure to apply particular legal principles, such as those identified in *McLaughlin* or *Smartt*, was bad faith conduct.

### b.    Failure to Pay Undisputed Amounts

Plaintiff additionally argues that Defendant should have paid Plaintiff 25 percent of his medical bills when Dr. Chen identified the 25 percent apportionment figure because Plaintiff contends that 25 percent was no longer in dispute at that time.  [#73 at 11]  The Colorado Supreme Court has held that "nothing in [Section 10-3-1115] requires or supports withholding payment of undisputed covered benefits simply because other portions of an insured's UIM claim remain disputed."  *Fisher*, 418 P.3d at 506.  And, as explained earlier, "the reasonableness of an insurer's decision to deny or delay benefits to its insured must be evaluated based on the information that was before the insurer at

---

provided support for the argument that this evidence may help to establish a prima facie case of unreasonable or willful and wanton behavior on the part of Defendant.  *See State Farm Mut. Auto. Ins. Co. v. Fisher*, No. 08-cv-01687-REB-MEH, 2009 WL 1011194, at *4-5 (D. Colo. Apr. 15, 2009) (holding that the plaintiff made out a prima facie case of willful and wanton behavior where the plaintiff alleged, among other things, that the insurance company adjuster lacked familiarity with governing case law).  This is not the standard for summary judgment.  Plaintiff must show that he is entitled to judgment as a matter of law.

the time it made its coverage decision." *Schultz*, 429 P.3d at 848. Thus, according to Plaintiff, Defendant was required to pay Plaintiff 25 percent of his medical bills upon receiving Dr. Chen's initial report. [#73 at 11]

But Plaintiff does not cite any law supporting the idea that an insurer must immediately and fully adopt the apportionment designation made by a physician who performs an IME. Defendant argues it did not have all of Plaintiff's medical records at the time the IME was performed. [#72 at 12] Accordingly, it does not appear unreasonable as a matter of law that Defendant held off deciding which benefits were undisputed until it had received all of Plaintiff's records. In fact, Dr. Chen changed his opinion as to apportionment as he received additional medical records, suggesting the missing records were pertinent to making an apportionment decision. [##73-9 at 2; 73-10 at 2] And insurance companies "may challenge claims which are fairly debatable." *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985) (quoting *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 377 (Wisc. 1978)). Though a challenge to a fairly debatable claim is not necessarily reasonable as a matter of law, it is also not necessarily unreasonable as a matter of law. Here, Plaintiff has not provided sufficient evidence to demonstrate, as a matter of law, that Defendant, in bad faith, failed to pay an undisputed amount.

Notably, Plaintiff also attempts to demonstrate the unreasonableness of Defendant's reliance on Dr. Chen's opinion as a whole by alleging that Dr. Chen was a biased actor. [#93 at 10] Plaintiff supports this contention with information about Dr. Chen's clientele and compensation. [#90 at 9] "Colorado law recognizes that an insurer may act unreasonably if it relies upon the opinion testimony of biased experts." *McCulloch v. State Farm Mut. Ins. Co.*, No. 18-cv-00226-MSK-NRN, 2020 WL

9424253, at *4 (D. Colo. Feb. 21, 2020) (citations omitted). However, the Court is unwilling to find an expert biased as a matter of law based solely on the clients they take and the amount of money they make. There is no proof on the record that Dr. Chen formulated his apportionment figure for the purpose of favoring Defendant or that Defendant chose Dr. Chen to perform the IME for that reason. Plaintiff's speculation as to possible bias is not sufficient to establish bad faith as a matter of law. The credibility of a witness is not a determination for the Court to make at the summary judgment stage; rather, this is a job for the jury. *Tolan*, 572 U.S. at 656 ("[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" (quoting *Anderson*, 477 U.S. at 249)).

### c.    Failure to Evaluate After June 2024

Finally, Plaintiff argues that Defendant failed to fulfill its duties by refraining from evaluating Plaintiff's UIM claim after June 2024. [##73 at 12-16] The basis of this argument is Defendant's failure to disclose to Plaintiff evidence of any good faith claim handling since June 2024 despite promising to do so. [##73 at 15-16; 73-11 at 1] Discovery in this case closed on May 2, 2025, without production of such evidence. [#73 at 15; *see also* #63]

Colorado's insurance regulations require that insurers maintain records of claims handling logs and notes. 3 Colo. Code Reg. 702-1:1-1-7(5)(E)(1). Specifically, the regulations require that insurers maintain the following records: receipt date of each claim, date of any request for additional information, date any requested additional information was received, communications regarding the claim, and other information necessary for

reviewing the claim, among other requirements. *Id.* §§ (5)(E)(1), (5)(E)(2)(a), (5)(E)(5). Plaintiff thus implies that because Defendant has not provided Plaintiff with an explanation of what Defendant did with any information it received after June 2024, Defendant necessarily acted in bad faith by failing to consider any evidence it received after that date.

Relatedly, Plaintiff argues that Defendant failed to communicate and provide an evaluation to Plaintiff regarding Defendant's investigation. [#73 at 14] Plaintiff notes that, though Defendant made some small payments of undisputed amounts throughout 2021 and 2022, Defendant did not provide an explanation or evaluation of Plaintiff's claim with those payments or thereafter. [*Id.*]

Defendant argues in response to these contentions that the "undisputed record shows that [Defendant] maintained consistent and ongoing communication with Plaintiff's counsel, reasonably continued its investigation in light of evolving medical evidence, and had no obligation to issue a final claim determination while causation, damages, and apportionment remained fairly debatable and actively litigated." [#88 at 15] Defendant describes its conduct as "reserving judgment while awaiting critical information, such as the results of the IME and evolving medical records that directly impacted causation and damages." [*Id.* at 16] Defendant contends that evidence in this case remained in flux through at least mid-2025, suggesting that its reservation of judgment was reasonable in light of evolving evidence. [*Id.*]

"[A]n insurer has an ongoing duty of good faith and fair dealing to its insured even after litigation is initiated between insured and insurer." *Bise v. Am. Fam. Ins. Co.*, No. 22-cv-03270-REB-KAS, 2024 WL 3023549, at *4 (D. Colo. May 7, 2024) (citing

*Sanderson*, 251 P.3d at 1217).  "However, an insurer's derivative duty to negotiate as a reflection of good faith is suspended if (1) an adversarial proceeding is filed; and (2) there is a genuine disagreement as to the amount of compensable damages."  *Id.* (citing *Bucholtz v. Safeco Ins. Co. of Am.*, 773 P.2d 590, 592-93 (Colo. App. 1988)).  "[I]f there is no genuine disagreement, then the insurer's duty to pay an undisputed claim continues unabated even if litigation has been filed concerning claims about which there is genuine disagreement."  *Id.*  (citations omitted).

"[W]hen post-litigation claim review materials are subject to disclosure, discovery becomes a moving target."  *Lynn v. State Farm Mut. Auto. Ins. Co.*, 748 F. Supp. 3d 1030, 1035 (D. Colo. 2024).  "However, unless and until Colorado law changes to relieve an insurer of its post-litigation duty of good faith, that duty must be tested through discovery."  *Id.*  And an insurer may not delay or deny a claim without "promptly provid[ing] a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim."  Colo. Rev. Stat.  § 10-3-1104(1)(h)(XIV).

Here, Plaintiff has not demonstrated the lack of dispute about any amount of compensable damages under Plaintiff's UIM policy.  Indeed, the record makes clear that Defendant disagrees with Plaintiff's assessment of the cause of Plaintiff's injuries.  [#93-1 at ¶¶ 5, 8, 10, 14, 17, 18]  And while a jury may find that Defendant's disagreement was unreasonable, the Court cannot conclude that Defendant's disagreement as to causation is unreasonable as a matter of law.  Rather, the Court has been offered evidence that as early as November 8, 2022, prior to the IME, Defendant began noting that some of the medical bills incurred by Plaintiff were not related to the automobile accident.  [#73-12 at 22]  And though Plaintiff disputes the accuracy of Dr. Chen's apportionment findings,

Plaintiff has not identified any evidence to suggest that Defendant's initial and continuing

concern that some of Plaintiff's treatment was not related to the accident is unreasonable

as a matter of law.  Defendant has offered evidence that Plaintiff's expert, Dr. Stanley,

agreed that Plaintiff had a history of back issues prior to the motorcycle accident.  [#88-1

at 2 (13:5)]  Accordingly, a jury could find that it was reasonable for Defendant to refrain

from making additional payments to Plaintiff throughout this litigation, as issues of

causation remain in dispute.  *Bise*, 2024 WL 3023549, at *4 (noting that an insurer's duty

to negotiate is suspended during an adversarial proceeding when there is a genuine

disagreement as to the amount of compensable damages).

Though Plaintiff has provided expert testimony that Defendant violated industry

standards in its evaluation of Plaintiff's claim, Defendant has also elicited expert testimony

that its investigative protocols and communication with treating physicians was in line with

standard industry practices.  [#94-5]  The Claim File Summary additionally indicates that

Defendant was in regular communication with Plaintiff, frequently reaching out to obtain

status updates and medical records.  [*See* #73-12]  And Plaintiff has not provided any

authority compelling the conclusion that Defendant's failure to produce claim handling

information since June 2024 indicates that Defendant has acted unreasonably as a matter

of law.[6]  Rather, this evidence may be used by a jury to determine whether Defendant

acted in bad faith.

---

[6] To the extent there has been a discovery violation, Plaintiff certainly could have brought
that violation to the Court's attention through the Court's discovery dispute process.

### d.    Conclusion

Plaintiff thus has not established, as a matter of law, that Defendant's conduct was unreasonable for purposes of either Plaintiff's common law bad faith or statutory bad faith claim.  Therefore, Plaintiff has not demonstrated that "there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Accordingly, Plaintiff's Motion is respectfully DENIED.

### B.    Exemplary Damages Claim

Defendant argues that it is entitled to summary judgment on Plaintiff's exemplary damages claim.  [#72 at 19-23]   Under Colorado law, exemplary damages may be awarded in a civil case where the injury complained of is attended by circumstances of willful and wanton conduct.  Colo. Rev. Stat. § 13-21-102(1)(a).  And this applies to cases of common law bad faith breach of an insurance contract.  *See Goodson*, 89 P.3d at 415.  "Willful and wanton" conduct means "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff."  Colo. Rev. Stat. § 13-21-102(1)(b).

Defendant presents two arguments in support of granting summary judgment on the exemplary damages claim.  First, Defendant contends that its reliance on Dr. Chen's expert opinion aligns with standard practices.  [#72 at 19-21]   Defendant argues that "disagreements between medical experts are not evidence of bad faith," though it notes Ms. Huiras did not compare Dr. Chen's reports with medical records from Plaintiff's treating providers in evaluating Plaintiff's claim.  [*Id.* at 20]   Defendant supports its argument with *McCulloch*, which holds that an insurance company's reliance on the

opinion of a doctor who performs an IME is not evidence of recklessness when the insurance company had no reason to know of any discrepancy that may have existed in the relevant report. *McCulloch*, 2020 WL 9424253, at *5. Defendant additionally uses an out of circuit opinion to argue that reliance on an expert is evidence of the reasonableness of an insurer's actions. *See Berbaum v. Amco Ins. Co.*, No. 1:21-cv-01004-STA-jay, 2022 WL 627035, at *4-5 (W.D. Tenn. Mar. 3, 2022).

Second, Defendant contends that its investigation of Plaintiff's claim was not biased. [#72 at 21-22] In support of this argument, Defendant states that it followed up with Plaintiff's counsel regarding the snow shoveling incident, which it argues constitutes an investigation that meets industry standards. [*Id.*] Nevertheless, Plaintiff offers expert testimony that Defendant's investigation of the snow shoveling incident did not meet industry standards. [##95-1 at ¶ 51; 90-2 at 10]

In any event, Plaintiff has provided additional evidence that could lead a reasonable jury to conclude that Defendant engaged in willful and wanton conduct. Plaintiff has established the fact that neither Dr. Chen nor Ms. Huiras were aware of Colorado apportionment law when evaluating Plaintiff's claim. [#93-1 at ¶¶ 22-24; 30-32] A claims handler's testimony that they lack knowledge of the law that applies to the claims they handled and received no training on the matter may suggest willful and wanton behavior on the part of a defendant insurer. *Franklin D. Azar & Assocs., P.C. v. Exec. Risk Indem., Inc.*, No. 22-cv-01381-RMR-NRN, 2023 WL 7130144, at *3 (D. Colo. Oct. 13, 2023); *Fisher*, 2009 WL 1011194, at *4. Indeed, Plaintiff offers expert testimony stating that Defendant violated industry standards by failing to know, document, and apply the correct legal standard. [#95-1 at ¶ 53]

Defendant argues that "the testimony of an adjuster who could not recall the name of a specific case or jury instruction does not equate to bad faith." [#94 at 11] But this statement mischaracterizes the evidence. Of course a Defendant will not be found to have acted in a willful and wanton manner simply because an adjuster cannot remember a case's name, provided the adjuster understands the principles from the case and adjusts accordingly. The problem here is that neither the adjuster nor the expert she relied upon knew basic principles of Colorado insurance law, and there is evidence that this ignorance may have caused Defendant to improperly withhold payments due Plaintiff. And the adjuster testified that she could not recall being trained on an area of Colorado insurance law critical to the adjusting of Plaintiff's claim. [#93-1 at ¶ 24] As the cases cited above demonstrate, a reasonable jury could conclude that Defendant's failure to train its adjusters (or at least refresh the training) on important principles of Colorado insurance law was done heedlessly and recklessly without regard to Plaintiff's rights.

Finally, Plaintiff has offered disputed evidence that Defendant refused to accept a tolling agreement despite needing more time to evaluate Plaintiff's claim when the statute of limitations was set to expire. [#90 at 5; #90-1 at ¶ 41; #94 at 4] In some cases, rejection of a tolling agreement can be considered "willful and wanton conduct." *Geoffroy v. Amica Mut. Ins. Co.*, No. 16-cv-01736-MSK-KMT, 2017 WL 11545772, at *3 (D. Colo. Dec. 1, 2017). Accordingly, regardless of whether Defendant's reliance on Dr. Chen's opinions met industry standards, Plaintiff responded to Defendant's Motion with specific facts showing that there is a genuine issue for trial. Therefore, Defendant has not demonstrated that "there is no genuine dispute as to any material fact and [that it] is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, Defendant's Motion as to Claim Four is respectfully DENIED.

## V.    CONCLUSION

For the foregoing reasons, both Defendant's Motion for Partial Summary Judgment [#72] and Plaintiff's Motion for Partial Summary Judgment [#73] are **DENIED**.


DATED: October 23, 2025                BY THE COURT:

                                       s/Scott T. Varholak
                                       Chief United States Magistrate Judge